# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALLEN THOMAS,<br><br>　　　　　　Petitioner,<br><br>　v.<br><br>VICTOR M. ALMAGER, Warden,<br><br>　　　　　　Respondent. | 1:07cv1174 LJO DLB HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Document 1) |

Petitioner James Allen Thomas ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**[1]

On February 26, 2004, in the Madera County Superior Court, a jury convicted Petitioner of selling cocaine base. As enhancements, Petitioner was found to have sustained a prior drug conviction for selling cocaine base in 1976, five prior strike convictions, and five prior prison-term convictions. He was sentenced to 26 years to life in prison.

Petitioner appealed to the Fifth District Court of Appeal. The Court affirmed the conviction and sentence on June 2, 2006.

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer to the petition.

1

1        Petitioner filed a petition for review in the California Supreme Court, which was denied
2   on August 16, 2006.
3        On August 15, 2007, Petitioner filed the instant federal petition. He argues that (1)
4   counsel was ineffective for failing to move to suppress identification testimony; (2) counsel was
5   ineffective for failing to object to evidence of Petitioner's prior criminal activity; and (3) his
6   sentence constitutes cruel and unusual punishment.
7        Respondent filed its answer on November 20, 2007.
8        Petitioner filed his traverse on March 3, 2008.

## STATEMENT OF FACTS[2]

In July 2003, the Madera County Narcotics Enforcement Team conducted an undercover operation in McNally Park. Agent Alfredo Fuerte participated in 17 controlled drug buys during this operation. He drove an undercover vehicle equipped with a concealed audio and video recording device and he wore a concealed audio wire device during the drug buys.

At approximately 3:00 p.m. on July 21, 2003, Agent Fuerte drove to McNally Park. He asked a Black male for "a 20" in Spanish. The man called to a group of children for an interpreter. One of the children approached Agent Fuerte's vehicle and translated Agent Fuerte's Spanish into English. Agent Fuerte said that he wanted a "roca" which is Spanish slang for rock cocaine. In response, the man yelled twice for "JT." An older Black male with a heavy moustache and a goatee or unshaven hair growth on his chin approached the vehicle. Petitioner handed Agent Fuerte a rock of cocaine base that was later determined to weigh .28 grams and Agent Fuerte handed Petitioner a recorded $20 bill. During trial, Agent Fuerte identified Petitioner as "JT" and testified that he had an unobstructed view of Petitioner's face for 5 to 10 seconds.

Agent Fuerte drove to a predetermined location where he met Agent Tim Brackemyre. They watched the videotape of the drug buy.[3] However, the sun had cast a shadow over the

---

[2] The Statement of Facts is taken from the Fifth District Court of Appeal's February 1, 2006, opinion.

[3] The videotape was played for the jury.

suspect's face in the videotape. Agent Fuerte described the seller to Agent Brackemyre and told him that the seller answered to the nickname "JT" Agent Brackemyre indicated to Agent Fuerte that he "was familiar with an individual who he thought might be Mr. James Thomas referred to as JT." Agent Brackemyre inputted search terms into the county computer database corresponding with the physical description of the seller and the nickname "JT." The results, which consisted of one or more photographs of Petitioner, were printed for Agent Fuerte to review (the photo display).[4] Agent Fuerte immediately identified the person depicted in the photos as the seller. Agent Brackemyre did not use a six-photo lineup because he knew Agent Fuerte was an experienced officer who had refused to identify suspects on two occasions. Of the 17 drug buys in which Agent Fuerte participated during this sting operation, he only bought drugs from one other older seller and this other seller's facial characteristics and body build were distinguishable from Petitioner.

Agent Brackemyre dispatched Sergeant John Markle to identify the Black male who initially approached Agent Fuerte's vehicle. Sergeant Markle identified this man as Calvin Lawrence. Sergeant Markle also saw and greeted Petitioner at the park. He recognized Petitioner because he had known him for the past 15 years. At trial, Sergeant Markle testified he had watched the videotape. He could not identify the seller. However, the seller's build is consistent with Petitioner's build.

Officer Todd Cregar testified for the defense. He did not participate in the sting operation and was not present in McNally Park when the drug sale took place. Officer Cregar testified he has seen Petitioner on a few occasions and he recognized him in court. When Officer Cregar first watched the videotape he felt the suspect might not be Petitioner.

## DISCUSSION

A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

---

[4] Agent Fuerte testified there was a single photograph. Agent Brackemyre testified there was a gallery of photographs.

3

1  or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,
2  529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered
3  violations of his rights as guaranteed by the U.S. Constitution.  Petitioner challenges his
4  conviction imposed by the Madera County Superior Court, which is located within the
5  jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).
6       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
7  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
8  enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S.
9  1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting
10 Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.
11 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059
12 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant
13 petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.
14 B.     Standard of Review
15      This Court may entertain a petition for writ of habeas corpus "in behalf of a person in
16 custody pursuant to the judgment of a State court only on the ground that he is in custody in
17 violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).
18      The AEDPA altered the standard of review that a federal habeas court must apply with
19 respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.
20 Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus
21 will not be granted unless the adjudication of the claim "resulted in a decision that was contrary
22 to, or involved an unreasonable application of, clearly established Federal law, as determined by
23 the Supreme Court of the United States;" or "resulted in a decision that was based on an
24 unreasonable determination of the facts in light of the evidence presented in the State Court
25 proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of
26 the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.
27 Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply
28 because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.   Ineffective Assistance of Counsel

Petitioner alleges two instances of ineffective assistance of counsel, both of which are based on counsel's alleged failure to object to certain evidence.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." 466 U.S., at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. See Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25 (1984).

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [United States Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The habeas corpus applicant bears the burden to show that the state court applied United States Supreme Court precedent in an objectively unreasonable manner. Price v. Vincent, 538 U.S. 634, 640 (2003). With this standard in mind, the Court now turns to each of Petitioner's claims of ineffective assistance of counsel.

///

///

1. *Agent Fuerte's Identification Testimony*

Petitioner first argues that counsel failed to move to suppress Agent Fuerte's testimony, which he believes was based on an unnecessarily suggestive photographic identification procedure. Petitioner argues that the procedure was defective because Agent Fuerte was shown multiple police photographs of Petitioner, and because Agent Brackemyre indicated to Agent Fuerte, through his actions and words, that he believed that Petitioner was the seller. In his traverse, he expands upon his argument by explaining that the identification was the primary evidence linking him to the crime, and that it was so suggestive that it gave rise to a substantial likelihood of irreparable misidentification. Given the importance of the identification evidence, Petitioner contends that there could be no tactical reason for failing to make a meritorious objection.

In denying this claim on appeal, the Court of Appeal found that Petitioner failed to establish a reasonable likelihood that a suppression motion would have been successful. It explained:

> The United States Supreme Court established the applicable test: "[E]ach case must be considered on its own facts, and . . . convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Simmons v. United States (1968) 390 U.S. 377, 384.)
>
> Appellant argues a single person photographic display is inherently suggestive. Not so. Our Supreme Court rejected this position, determining in People v. Ochoa (1998) 19 Cal.4th 353, that a "'"single person showup" is not inherently unfair.'" (Id. at p. 413.) Although a single person photo lineup may pose a danger of suggestiveness, all the circumstances must be considered in determining whether the identification procedure was so impermissibly suggestive that it gave rise to a very substantial likelihood of irreparable misidentification. (People v. Medina (1995) 11 Cal.4th 694, 753.)
>
> Appellant's assertion that a six-person photographic lineup is commonly utilized by law enforcement officers to identify suspects was directly contradicted by Agent Fuerte at trial. He testified that during courses with the Department of Justice he was not trained to use a six-pack photo lineup. He has never been shown a six-pack lineup to identify an individual as the person from whom he bought narcotics. The common method used to identify suspects during undercover operations is to pull photos from available records based on the agent's description of the suspect and, if available, a videotape of the transaction. This is exactly what occurred in this instance.
>
> There is no merit to appellant's contention that the procedure utilized to generate the photo display was impermissibly suggestive. The command searches used to generate the photo display were directly connected to the seller's nickname and description. As

previously explained, Agent Fuerte was an experienced undercover agent who was trained to identify suspects based on single person photo displays. He refused to identify suspects on two prior occasions. Given Agent Fuerte's training and experience, the possible use of multiple photographs of appellant diminished the risk of misidentification. It did not create psychological pressure to identify appellant.

We agree with respondent that the totality of the circumstances demonstrate the reliability of Agent Fuerte's identification. Agent Fuerte is trained to be alert in identifying drug sellers. Agent Fuerte had an unobstructed view of appellant's face during the transaction and he made the identification shortly after the sale. The nickname of "JT" corresponds to appellant's first and last names and the physical description provided by Agent Fuerte corresponds to appellant's general appearance.[5] Furthermore, the record does not support appellant's assumption that Agent Fuerte's identification testimony was based on the photo display. Agent Fuerte did not testify that his in-court identification was based on his earlier photographic lineup. Rather, he testified there was "no doubt in [his] mind" that appellant "was the person [from whom he] purchased narcotics."

Appellant's reliance on People v. Nation (1980) 26 Cal.3d 169 (Nation) is misplaced. Nation's facts bear no similarity to the instant case. There, three girls were confronted at gunpoint by the perpetrator. He took one of the girls into nearby bushes and attempted to rape her. Two weeks after the incident, the girls were shown photographs of potential suspects. One of the girls identified defendant. After discussion, the other girls agreed. The girls were permitted to take defendant's photo home to show other possible witnesses; they kept the photo for a week. About three months later, a live lineup occurred. All of the girls selected a person other than defendant as the perpetrator. At trial, the girls identified the photograph of the defendant but could not identify him in court as the perpetrator. In sharp contrast, this case involves a trained undercover officer who identified appellant in a photo display immediately after the drug buy. At trial, this agent unequivocally identified appellant as the seller.

Accordingly, we conclude a suppression motion would have failed because appellant could not have shown that the photographic identification gave rise to a very substantial likelihood of irreparable misidentification. Having failed to establish a likelihood of success on the merits, appellant has not established that counsel's omission constitutes deficient performance. (See, e.g., People v. Lucas (1995) 12 Cal.4th 415, 445.) Obviously, "[t]rial counsel is not required to make futile objections, advance meritless arguments or undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel." (People v. Jones (1979) 96 Cal.App.3d 820, 827.)

This decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The court applied the correct legal standard and reasonably concluded that Petitioner had failed to demonstrate prejudice. "To show prejudice under Strickland

---

[5] Appellant's attempt to create a meaningful discrepancy between Agent Fuerte's description of the seller and appellant's appearance fails. It is undisputed that appellant had a moustache. However, appellant points out that Agent Fuerte originally described the suspect as having a goatee while at trial he testified the suspect either had a goatee or had not shaved in a few days and had hair growth on his chin. We find the distinction between an unshaven chin and a goatee to be insignificant. Furthermore, appellant misrecollected Sergeant Markle's testimony concerning appellant's appearance at the park. Sergeant Markle did not testify that appellant did not have a goatee. He merely testified that he could not recall whether appellant had any facial hair other than a moustache.

resulting from the failure to file a motion, a defendant must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." Wilson v. Henry, 185 F.3d 986, 990 (9th Cir.1999) (internal citations omitted).

In Petitioner's case, while there may have been evidence that called the identification into question, the evidence was minimal and any doubt created was slight. Moreover, any such evidence was outweighed by evidence of a proper identification. The steps taken in the identification process were logically linked to the information obtained by Agent Fuerte, and there is no indication that the process was unnecessarily suggestive to give rise to a very substantial likelihood of irreparable misidentification. Simmons, 390 U.S. 384. This makes it highly unlikely that a suppression motion would have been granted.

For example, Agent Fuerte testified that once he asked for rock cocaine, the subject that originally approached his car "yelled out towards some other individuals there, he yelled at least twice, 'JT, JT.'" RT 2145. The man that answered the call and came to the vehicle was an older Black male adult, wearing a black tank top, with a heavy salt and pepper mustache and either a goatee or some unshaven hair growth on his chin. RT 2145-2146. Shortly thereafter, Agent Fuerte relayed this information to Agent Brackemyre, who then "pulled a Madera County booking photograph off a computer at his office." RT 2150. Agent Fuerte identified this as the person who sold him the rock cocaine. He also made an in-court identification of Petitioner. RT 2150, 2151.

Although Petitioner suggests that Agent Brackemyre tainted Agent Fuerte's identification, his actions were based on Agent Fuerte's information, which included a physical description and the name "JT." This link, when combined with Agent Fuerte's experience and training as an undercover officer, precludes a finding that the process was unnecessarily suggestive. Furthermore, the jury was shown the videotape of the encounter and heard Petitioner's counsel cross-examine both Agent Fuerte and Agent Brackemyre. Simmons, 390 U.S. at 384 ("The danger that use of the technique may result in convictions based on

misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error.").

Petitioner's claim is without merit and should be denied.

2.   *Evidence of Petitioner's Criminality*

In his second argument, Petitioner contends that counsel failed to object to evidence of his criminal past. Petitioner explains that counsel, at first, seemed to understand the importance of keeping this information from the jury by requesting that Officer Cregan be referred to as a law enforcement officer, rather than a parole officer, and that a photograph not be referred to as a booking photograph. The court deferred ruling on the photograph issue because the prosecution was not certain as to its use. The parties agreed that Officers Cregar and Merkle would be referred to as law enforcement officials. RT 1805-1806.

Petitioner faults counsel for failing to object when, during trial, (1) Agent Fuerte used the term "booking photographs;" (2) Agent Brackemyre testified that the Madera Police Department had many pictures of Petitioner in its database; (3) Agent Brackemyre indicated that he was the head of the undercover drug buying operation and that he was familiar with Petitioner; and (4) Sergeant Markle testified that he had known and contacted Petitioner for more than 15 years, and that he asked Petitioner if he was staying out of trouble shortly after the drug deal.[6] Petitioner believes that this evidence was inadmissible propensity evidence and that had counsel objected to its admission, there is a reasonable probability that the outcome of his trial would have been more favorable.

The Court of Appeal determined that counsel's actions were reasonable trial tactics given Petitioner's defense of mistaken identity. It explained:

> "The decision whether to object to evidence at trial is a matter of tactics and, because of the deference accorded such decisions on appeal, will seldom establish that counsel was incompetent." (People v. Lucas, supra, 12 Cal.4th at p. 444.) As explained in People v. Perry (1969) 271 Cal.App.2d 84, "[T]he indiscriminate use of objections, solely because they are available, aids neither the client nor the cause of justice. The

---

[6] To the extent Petitioner points to counsel's failure to request a limiting instruction as another instance of ineffective assistance, he cannot raise an argument for the first time in his traverse. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994) (noting that a district court need not consider claims raised for the first time in a traverse.)

10

choice of when to object and when to allow the evidence to come in as offered is inherently a matter of trial tactics." (Id. at pp. 114-115.)

Defense counsel specifically explained he did not object to the reference to a booking photo because he did not want to draw additional attention to this fact. This fell well within the wide latitude granted trial counsel.

Similarly, it was reasonable not to draw attention to possible implications of Sergeant Markle's testimony that he asked appellant if he was staying out of trouble. The jury reasonably could have understood this question as a colloquial expression of greeting. Objection would only have highlighted the possible implication of this query as referencing appellant's prior criminality.

Testimony that Agent Brackemyre and Officer Cregar were familiar with appellant served legitimate purposes. Agent Brackemyre's testimony before the grand jury that he recognized the person in the videotape as appellant because he was familiar with him was used to impeach his trial testimony, i.e., that he did not recall testifying before the grand jury in that manner. During closing argument, defense counsel cited this as an example of "an officer making a mistake." Agent Brackemyre's testimony that the photo gallery consisted of multiple images of appellant was used by counsel during his closing argument in two ways: (1) to point out a conflict with Agent Fuerte's testimony that he was shown one photo; and (2) to argue that the photo display was unfairly suggestive and could have "cause[d] an officer to make a mistake." Defense counsel's query whether Agent Cregar was familiar with appellant provided foundation for the agent's testimony that when he first viewed the videotape he thought appellant was not the seller. Based on Agent Cregar's testimony, defense counsel argued in closing there was conflicting testimony among law enforcement officers about the seller's identity.

Finally, the decision whether or not to request CALJIC No. 2.50 was a tactical choice to be made by defense counsel. No specific testimony was offered about appellant's prior criminal history. Counsel reasonably could have decided the instruction might cause more harm than benefit because it could have caused some of the jurors to wonder about possible prior crimes committed by appellant.

We therefore conclude appellant has not demonstrated that defense counsel's course of conduct fell outside the range of reasonable tactical decisions. Having failed to establish deficient performance, his ineffective assistance claim fails.

This decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. As the Court of Appeal correctly noted, defense counsel made a reasonable tactical decision in not objecting to the evidence Petitioner identifies. Indeed, in regard to Agent Fuerte's use of the term "booking photo," counsel specifically explained, on the record:

> One other thing I want to bring up, there was a mention referring to the photo of Mr. Thomas as a booking photo, and I gave the consideration of possibly requesting an admonition to the jury not to draw any conclusions from that, but I chose I think as a tactic not to draw more attention to that than necessary, so I just wanted to put that on the record.

11

1  RT 2167.

2  Similarly, counsel used much of the evidence Petitioner points to in support of his
3  defense of mistaken identity.  For example, although counsel raised Agent Brackemyre's
4  testimony to the grand jury that he was familiar with Petitioner from his past history with the
5  Madera Police Department, he did so in an attempt to impeach his identification testimony.  RT
6  2181.  Agent Brackemyre testified at trial that he did not recognize Petitioner from the videotape,
7  but he testified to the contrary before the grand jury.  When counsel asked him about this
8  conflict, Agent Brackemyre testified that he did not remember his testimony to the grand jury.
9  Counsel then read the pertinent sections of his grand jury testimony, which included, "I, upon
10 viewing the tape, I recognized the individual that did the transaction as James Thomas.  I'm
11 familiar with Mr. Thomas from my past history with the Madera Police Department."  RT 2183.
12 Raising Agent Brackemyre's familiarity with Petitioner was therefore central to the defense
13 strategy.

14 As to Agent Brackemyre's testimony that a "specific data base has a photo gallery of Mr.
15 Thomas in several photos," the testimony was elicited by defense counsel in an attempt to raise
16 doubt as to Petitioner's identification.  RT 2186.  Counsel again made a reasonable tactical
17 decision that the benefits of raising the issue would outweigh any possible prejudice.

18 A tactical decision was also likely the basis for not objecting the Sergeant Markle's
19 testimony that when he encountered Petitioner in the park, he asked "how he was doing" and "if
20 he was staying out of trouble."  RT 2121.  As the Court of Appeal indicated, the jury could have
21 taken this as just some friendly banter between an officer and citizen, and raising an objection
22 would have, at the very least, made the jury wonder what Petitioner was trying to conceal.

23 Petitioner's claim is without merit and should be denied.

24 D.    Cruel and Unusual Punishment

25 In his final argument, Petitioner contends that his sentence of 26 years to life was cruel
26 and unusual punishment in violation of the Eighth Amendment.

27 //
28 //

1          1.      *Procedural Default*

2          Citing People v. Norman, 109 Cal.App.4th 221, 229 (2003) and People v. Kelley, 52

3   Cal.App.4th 568, 583 (1997), the Court of Appeal determined that Petitioner's cruel and unusual

4   punishment was not preserved for appellate review because he failed to present the argument to

5   the trial court.  A federal court will not review a petitioner's claims if the state court has denied

6   relief of those claims pursuant to a state law that is independent of federal law and adequate to

7   support the judgment.  Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S.Ct. 2590, 2592 (1991);

8   Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 2553-54 (1989); See, also, Fox

9   Film Corp. v. Muller, 296 U.S. 207, 210, 56 S.Ct. 183, 184 (1935).  A state court's refusal to

10  hear the merits of a claim because of petitioner's failure to follow a state procedural rule is

11  considered a denial of relief on independent and adequate state grounds.  Harris v. Reed, 489

12  U.S. 255, 260-61, 109 S.Ct. 1038, 1042 (1989).

13         It therefore appears that Petitioner's claim is procedurally defaulted, but as the Court of

14  Appeal did, this Court will nonetheless discuss the merits of his issue.

15         2.      *Analysis*

16         A criminal sentence that is not proportionate to the crime for which a defendant is

17  convicted may indeed violate the Eighth Amendment.  The Supreme Court has decided two cases

18  which discuss the clearly established federal law applicable to California Three Strikes cases.

19  See Ewing v.  California, 123 S. Ct.1179 (2003); Lockyer v.  Andrade, 123 S. Ct.1166 (2003).

20         In Andrade, the Supreme Court discussed the current state of Eighth Amendment

21  proportionality review and held that the only clearly established governing legal principle is that

22  a "gross disproportionality" review applies to criminal sentences for a term of years.  Id. at 1173.

23  Citing extensively to its past cases dealing with criminal sentencing and proportionality under the

24  Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent

25  path for courts to follow."  Id.

26         The Supreme Court held that "the only relevant clearly established law amenable to the

27  'contrary to' or 'unreasonable application of' frame work is the gross disproportionality

28  principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and

'extreme' case." Id.  The Court analyzed Andrade's sentence under Rummel v. Estelle, 445 U.S. 263 (1980), Solem v. Helm, 463 U.S. 277 (1983) and Harmelin v. Michigan, 501 U.S. 957 (1991), and held that the state court "did not confron[t] a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrive at a result different from our precedent." Id. at 1173-1174.  Using section 2254(d)(1)'s "unreasonable application" clause, the Court also held that it was not objectively unreasonable for the California Court of Appeal to conclude that the contours of the gross disproportionality principle permitted an affirmance of Andrade's Three Strikes sentence. Id. at 1175.

In Ewing, the Supreme Court again reviewed the constitutionality of a Three Strikes sentence of 25 years to life for stealing three golf clubs.  After reviewing the Court's Eighth Amendment jurisprudence, the Court chose to adopt Justice Kennedy's view [7] that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

Ewing, at 1186-1187.

Recognizing that state legislatures have a right to formulate penological schemes consistent with the state's policy goals and free from federal intrusion, the Court validated the California Three Strikes law, stating "[s]electing the sentencing rationales is generally a policy choice to be made by the state legislatures, not the federal courts." Id. at 1187.  The Court deferred to the California Legislature's policy judgement to enact a tough recidivism statute and held that states have "a valid interest in deterring and segregating habitual criminals." Id. (*citing* Parke v. Raley, 506 U.S. 20, 27 (1992)).

In conducting a proportionality review of Ewing's sentence, the Court stated, "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism." Id. at 1189-1190.  The Court noted that "any

---

[7]As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)(*citing* Solem v. Helm, 463 U.S. 277, 288 (1983).

other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." Id. at 1190. In imposing a Three Strikes sentence on a recidivist criminal, the Court recognized the state's interest in dealing "in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." Id. (*citing* Rummel v. Estelle, 445 U.S. 263, 276 (1980)). Accordingly, proportionality review must take this interest into account. Id. The Court held that Ewing's sentence of 25 years to life was justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by Ewing's long, serious criminal record. Id.

Turning to Ninth Circuit case law, in Ramirez v. Castro, 365 F.3d 755 (9th Cir.2004), the Court held that a 25 year to life sentence under California's Three Strikes law for a third offense of shoplifting a $199 VCR was cruel and unusual punishment because Ramirez' criminal history was "comprised solely of two 1991 convictions for second-degree robbery obtained through a single guilty plea, for which his total sentence was one year in county jail and three years probation." Id. at 758.

Thereafter, in Rios v. Garcia, 390 F.3d 1082 (9th Cir.2004), the court distinguished the holding in Ramirez from the situation it confronted, finding that the petitioner in Rios had a "lengthy criminal history," had "been incarcerated several times," and that the prior strikes used to enhance the petitioner's sentence had "involved the threat of violence." Id. at 1086.

The Court finds that Petitioner's case does not fall within the type of "exceedingly rare" cases that would support a finding that his sentence violates the Eighth Amendment. The Court of Appeal found that Petitioner's "act of selling cocaine base in a public park where children were present and his extensive 40-year criminal history amply justify his sentence." It continued:

> The 26-year prison term is not disproportionate to the offense or the offender and does not offend fundamental notions of human dignity. Rather, it is appellant's conduct that "offends fundamental notions of human dignity."

Indeed, as set forth above, Petitioner has a lengthy criminal history. The Court of Appeals summarized it as follows:

Three prior strikes were found true. The strike allegations were based on appellant's 1970 robbery conviction and his 1985 robbery and burglary convictions. The offense dates of the 1985 strikes are different, although the convictions occurred on the same date. Appellant was sentenced under the three strikes law to 26 years to life imprisonment.

The probation report sets forth appellant's background and criminal history. Appellant was 59 years old when he was sentenced for this offense and he has been committing crimes for over 40 years. Appellant entered the justice system in 1961, when he suffered a juvenile adjudication for statutory rape. His adult convictions began in 1966, when he was convicted of burglary. In addition to the three prior strike offenses, appellant has suffered two prior felony drug convictions (transporting a controlled substance in 1976 and illegal drug possession in 1993) and he was convicted of forgery in 1986. Appellant was convicted in 1999 of a misdemeanor, falsely identifying himself to a peace officer. Appellant had five parole violations between April 1999 and June 2002. He was discharged from parole in February 2003. He committed the instant crime seven months later.

Further, although his commitment offense may have been nonviolent, his crimes were certainly not victimless. Petitioner was convicted of selling rock cocaine, and his sale involved the assistance of a child. As Justice Kennedy explained in Harmelin, "[p]ossession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" Harmelin, 501 U.S. at 1002 (Kennedy, J., concurring) (quoting Treasury Employees v. Von Raab, 489 U.S. 656, 668 (1989) (emphasis added)); Taylor v. Lewis, 460 F.3d 1093 (9th Cir. 2006).

Although Petitioner contends that his sentence was unconstitutional because he sold only .28 gams of rock cocaine to an undercover officer who solicited the transaction, Petitioner's sentence was based not only on the underlying crime, but also on his history as a repeat criminal offender. As in Taylor, the "State of California legislated against [Petitioner's] recidivism, not merely his narcotics possession." Taylor, 460 F.3d at 1100; Ewing, 538 U.S. at 29 (concluding that the petitioner's "sentence [was] justified by the State's public-safety interest in incapacitating and deterring recidivist felons").

Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner's claim is without merit and should be denied.

///

///

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   June 30, 2008              /s/ Dennis L. Beck
                                    UNITED STATES MAGISTRATE JUDGE